# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LINDA O'RISKY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 1046 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| MEAD JOHNSON NUTRITION CO., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

After Defendant Mead Johnson Nutrition Co. ("MJN") terminated Plaintiff Linda O'Risky, claiming the termination was part of a global reduction-in-force and restructuring, O'Risky filed suit against MJN. She alleges MJN terminated her in retaliation for raising concerns about safety issues related to defects in the manufacture of MJN's ready-to-use infant formula and other cultural and organizational issues. She brings claims for retaliation in violation of (1) the Food Safety Modernization Act ("FSMA"), 21 U.S.C. § 399d; (2) the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A; (3) the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("DFA"), 15 U.S.C. § 78u-6(h); and (4) Illinois common law. MJN moves to dismiss O'Risky's claims under the DFA and Illinois common law. Because Indiana, and not Illinois, law applies to O'Risky's common law retaliatory discharge claim and Indiana does not recognize whistleblowing as a basis for a retaliatory discharge claim, the Court dismisses O'Risky's common law retaliation claim. The Court defers consideration of MJN's motion to dismiss the retaliation claim under the DFA in light of the Supreme Court's grant of *certiorari* in *Digital Realty Trust, Inc. v. Somers* to resolve the issue of whether an individual

must report alleged misconduct to the Securities and Exchange Commission ("SEC") to receive protection under the DFA's anti-retaliation provision for whistleblowers.

## BACKGROUND[1]

O'Risky began working for MJN in 1990, when it was part of Bristol-Myers Squibb. With a degree in chemical engineering, she worked both in research and development and in quality and compliance leadership roles. In 2013, Peter Van Dael, the Vice President for Global Regulatory and Nutrition Science, and Dirk Hondmann, the Chief Scientific Officer, recruited O'Risky to the role of Director of Global Product Compliance. In this role, O'Risky had responsibility for conducting internal auditing for quality, food safety, and regulatory compliance at MJN's facilities. O'Risky worked primarily in MJN's Evansville, Indiana facility, spending approximately ten to fifteen percent of her time at MJN's headquarters in Glenview, Illinois. Her second-line supervisor, Jeffrey Jobe, was also based in Evansville. Although O'Risky reported to Dr. Van Dael, who reported to Dr. Hondmann, she interacted regularly with Jobe, with whom she ran into issues concerning how to address audit concerns. O'Risky also encountered difficulties in improving MJN's compliance processes when her budget was cut and promised support positions were not filled.

In March 2015, O'Risky became aware of a potential food safety issue with MJN's eight-ounce ready-to-use infant formula products and accompanying sealing defects. When she attempted to escalate the issue with management, including Jobe, she encountered resistance. Nonetheless, she continued to raise the issue, including by conveying the contents of a complaint to MJN's Integrity Concern compliance hotline. In April 2015, Dr. Van Dael told her that she

---

[1] The facts in the background section are taken from O'Risky's complaint and are presumed true for the purpose of resolving MJN's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

needed to drop the ready-to-use infant formula seal defect issue. Shortly thereafter, however, MJN began a compliance investigation based on her Integrity Concern complaint, with Jennifer Zerm, the Vice President of Risk and Compliance, who was based in Glenview, Illinois, corresponding with O'Risky. O'Risky provided Zerm with information on her compliance concerns and recommended individuals for Zerm to interview. In May 2015, Zerm and two investigators from Deloitte & Touche came to MJN's Evansville office to conduct interviews, focusing on contaminated formula, complaint handling, responses to compliance concerns, non-conformity investigations, and the ready-to-use infant formula spoilage issues. Zerm informed O'Risky in late June that the investigation concluded but that she could not disclose the outcome or substance of the recommendation. In late August, Zerm and Brandon Young, a Director of Compliance, met with O'Risky at a restaurant to discuss her complaint. Zerm indicated she had escalated the issue to her supervisor, Vernon McCrory, the Senior Vice President of Risk and Compliance. O'Risky continued sending Zerm additional information regarding the seal failure after this meeting.

Given the focus of Zerm's investigation, O'Risky's colleagues identified her as the source of the Integrity Concern complaint. Her colleagues then made O'Risky's life at work more difficult. For example, when O'Risky expressed interest in April 2015 in the Vice President of Quality position, she was told that Jobe would not consider her for the position because she "challenged him too much." Doc. 1 ¶ 51. She also was told to stop investigating the ready-to-use infant formula seal and spoilage problems. Jobe canceled Quality Council meetings, which O'Risky typically led, marginalizing her further. Additionally, she encountered difficulties finalizing updates to MJN's Quality Manual, one of her main tasks in 2015.

In August 2015, with MJN still not having acted on the ready-to-use infant formula seal issues she had identified, O'Risky filed a second Integrity Concern hotline complaint. In this complaint, she detailed her concerns about the seal issues and MJN's refusal to fulfill its legal obligations with respect to reporting, safety, and quality. Also in August, the Food and Drug Administration ("FDA") conducted a routine inspection of MJN's Evansville facility, reviewing a sample of the complaints MJN received every month. But O'Risky believed the disclosures MJN made to the FDA did not reveal the full scope of the ready-to-use infant formula problem or the shortcomings of MJN's investigation and remedial measures. Ultimately, in October 2015, MJN restricted the distribution of its eight-ounce ready-to-use infant formula products that may have been affected by the seal defect.

On October 22, MJN held an earnings call, during which executives told investors that "compliance [would] remain a key component of the way [MJN does] business." *Id.* ¶ 59. For that reason, MJN management indicated that it had not included compliance as part of its Fuel for Growth initiative, a cost-cutting plan that included layoffs. Soon thereafter, O'Risky also received a document from a presentation to MJN's Board of Directors' Science and Technology Committee, which emphasized the need to focus on product quality. O'Risky thus believed her job to be secure. But on November 10, 2015, O'Risky learned from LeeAnn Newmann, MJN's Vice President of Human Resources, that MJN had decided to terminate her, with Newmann and Dr. Van Dael citing the Fuel for Growth initiative as the reason for her termination. Immediately after learning of her termination, Dr. Van Dael escorted her to her office, where an information systems staff member arrived and took her computer. O'Risky was then escorted out of the building. None of the other fifty employees terminated from the Evansville facility were treated similarly.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.      Common Law Retaliatory Discharge Claim (Count 4)**

O'Risky purports to bring a claim for common law retaliatory discharge in violation of Illinois public policy. MJN argues, however, that Indiana law should govern O'Risky's retaliatory discharge claim because Indiana, and not Illinois, has the most significant relationship to O'Risky, her alleged injuries, her relationship with MJN, and her claim.

Becuase the Court considers O'Risky's common law retaliatory discharge claim under its supplemental jurisdiction, it applies Illinois' choice of law rules to determine the applicable substantive law. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). The Court must engage in a choice of law determination when "a difference in law will make a difference in the outcome." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*,

10 N.E.3d 902, 905, 2014 IL 116389, 381 Ill. Dec. 493 (2014).  Here, a conflict exists: Indiana does not recognize a common law claim for whistleblower retaliation, while Illinois does. *Compare Bregin v. Liquidebt Sys., Inc.*, No. 1:06-CV-23-TS, 2008 WL 150611, at *14 (N.D. Ind. Jan. 14, 2008) (finding that plaintiff did not have a cognizable cause of action for retaliatory discharge as a whistleblower under Indiana law), *aff'd*, 548 F.3d 533 (7th Cir. 2008), *with Michael v. Precision Alliance Grp., LLC*, 21 N.E.3d 1183, 1188, 2014 IL 117376, 387 Ill. Dec. 12 (2014) (acknowledging that whistleblowing may serve as a basis for a retaliatory discharge action).  Thus, the Court must determine whether Illinois or Indiana law applies to O'Risky's retaliatory discharge claim.

Illinois applies the Restatement (Second) of Conflict of Laws' "most significant relationship" test in determining which state's law applies to a retaliatory discharge claim.  *See Nieman v. Nationwide Mut. Ins. Co.*, 706 F. Supp. 2d 897, 910 (C.D. Ill. 2010); *Esser v. McIntyre*, 661 N.E.2d 1138, 1141, 169 Ill. 2d 292, 214 Ill. Dec. 693 (1996).  "[T]he law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and the parties." *Esser*, 661 N.E.2d at 1141.  The Court considers where the injury occurred, where the injury-causing conduct occurred, the parties' domicile, and where the parties' relationship is centered. *Id.*

Here, O'Risky's injury occurred in Indiana, where MJN terminated her.  *See Bell v. Don Prudhomme Racing, Inc.*, 939 N.E.2d 100, 108–09, 405 Ill. App. 3d 223, 345 Ill. Dec. 371 (2010) (finding that the location of the injury for purposes of retaliatory discharge action is where the plaintiff was located at the time of termination and not where the defendant made the decision to terminate the plaintiff).  Thus, Indiana law presumptively applies, unless the

complaint establishes a more significant relationship with Illinois. *See Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 903, 227 Ill. 2d 147, 316 Ill. Dec. 505 (2007).

But the alleged facts do not support overruling the presumptive application of Indiana law. Even the injury causing conduct occurred mainly in Indiana, where the ready-to-use formula issues arose, where O'Risky's main interactions with MJN management occurred, and where she initiated her many complaints concerning MJN's management of the ready-to-use formula compliance problems. Although some conversations concerning O'Risky's discharge may have occurred in Illinois, the majority of the issues with compliance, O'Risky's concerns being ignored, and ultimately her marginalization and termination originated in Indiana, where Jobe, her second-line supervisor who displayed animosity towards her escalation of concerns, was based. *See French v. Beatrice Foods Co.*, 854 F.2d 964, 966–67 (7th Cir. 1988) (applying Alabama law where plaintiff was terminated in Alabama and employment relationship was centered in Alabama, notwithstanding fact that plaintiff had conversation concerning his future with Illinois management and that Illinois but not Alabama recognized retaliatory discharge claim). The third factor to be considered, the domicile of the parties, is neutral: O'Risky resides in Indiana and MJN is a Delaware corporation headquartered in Illinois. Finally, the fourth factor, where the parties' relationship is centered, supports the application of Indiana law, as O'Risky worked primarily in Indiana, spending only ten to fifteen percent of her time in Illinois, and the underlying issues in the complaint arose in MJN's Evansville facility. *See Nieman*, 706 F. Supp. 2d at 910 (despite fact that plaintiff traveled to other states as part of his job, his relationship with his employer was centered in Indiana, where he interacted with his supervisor and had his home base). Having considered these factors, the Court finds that Indiana law applies to O'Risky's retaliatory discharge claim.

Under Indiana law, O'Risky's retaliatory discharge claim fails. Indiana law recognizes at will employment, meaning that MJN could terminate O'Risky at any time for "good reason, bad reason, or no reason at all." *Meyers v. Meyers*, 861 N.E.2d 704, 706 (Ind. 2007) (quoting *Montgomery v. Bd. of Trs. of Purdue Univ.*, 849 N.E.2d 1120, 1128 (Ind. 2006)). Indiana recognizes certain limited exceptions, allowing retaliatory discharge claims for filing a worker's compensation claim and for "refusing to violate a legal obligation that carried penal consequences." *Id.* at 706–07. Whistleblowing, which O'Risky claims as the basis for her common law retaliatory discharge claim, does not fall into one of Indiana's recognized exceptions. *See Bregin*, 548 F.3d at 537 ("[W]histle-blowing simply does not form the basis for an exception to Indiana's employment-at-will doctrine."). Therefore, the Court dismisses O'Risky's retaliatory discharge claim.[2]

## II. DFA Retaliation Claim (Count 3)

MJN also seeks dismissal of O'Risky's DFA retaliation claim, arguing that O'Risky does not qualify as a whistleblower under the DFA and so cannot bring a claim for retaliation under 15 U.S.C. § 78u-6(h). Specifically, MJN contends that the DFA does not protect internal whistleblowers, such as O'Risky, and instead applies only to those who provide information to the SEC, hewing to a literal reading of the statutory text. *See Martensen v. Chicago Stock Exch.*, No. 17 C 1494, 2017 WL 2461548, at *2–3 (N.D. Ill. June 7, 2017); *Asadi v. G.E. Energy (USA),*

---

[2] The Court notes that O'Risky's common law retaliatory discharge claim would fail under Indiana law for the additional reason that O'Risky has adequate statutory remedies, which she is currently pursuing in this case. *See Stocker v. Extendicare Health Servs., Inc.*, No. 3:16-CV-69-TLS, 2017 WL 83753, at *4 (N.D. Ind. Jan. 10, 2017) (dismissing common law retaliation claim under Indiana law where plaintiff had statutory remedies under the False Claims Act and other federal statutes). The same holds true under Illinois law, notwithstanding the fact that the federal statutory remedies provide that they do not preempt state remedies. *See Zwick v. Inteliquent, Inc.*, 83 F. Supp. 3d 804, 809 & n.2 (N.D. Ill. 2015) (dismissing common law retaliatory discharge claim under Illinois law where plaintiff had adequate remedy under the Sarbanes-Oxley Act, noting that "Illinois courts do not require the statutory remedy to be *identical* to the common law remedy in order for the common law remedy to be prohibited, but merely that a statute provides an *alternative* remedy").

*L.L.C.*, 720 F.3d 620, 627–28 (5th Cir. 2013).  But O'Risky responds that this Court should follow the Second and Ninth Circuits, which have extended the DFA's anti-retaliation protection to internal whistleblowers as well, deferring to the SEC's interpretation of the whistleblower definition.  *See Somers v. Digital Realty Tr., Inc.*, 850 F.3d 1045, 1049–51 (9th Cir. 2017); *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 155 (2d Cir. 2015).  The Supreme Court recently granted certiorari in *Digital Realty Trust, Inc. v. Somers* to resolve the issue.  No. 16-1276, 2017 WL 1480349 (U.S. June 26, 2017).[3]  Given this, the Court defers consideration of MJN's motion to dismiss O'Risky's DFA retaliation claim until the Supreme Court resolves the *Digital Realty Trust* petition.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part MJN's motion to dismiss [16].  The Court dismisses O'Risky's common law retaliatory discharge claim (Count 4) with prejudice.  The Court denies MJN's motion to dismiss O'Risky's DFA retaliation claim (Count 3) without prejudice to refiling after the Supreme Court issues its decision in the *Digital Realty Trust, Inc. v. Somers* case.

Dated: August 8, 2017

_____
SARA L. ELLIS
United States District Judge

---

[3] The Seventh Circuit is also currently considering an appeal in which the same issue has been raised.  *See Verfuerth v. Orion Energy Systems, Inc.*, No. 16-3502 (7th Cir.).